**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DUSTIN PHILLIPS,  et al.,

                     Petitioners,

v.                                 CIVIL ACTION NO.   2:24-cv-00158

DARREN GALISKY,

                     Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are competing motions.   The first motion is by Dustin Phillips and Aaron Hallof ("Petitioners"), requesting the Court to confirm the arbitration award issued on March 15, 2024.   (ECF Nos. 1, 13.)   The other motion is an opposing request by Darren Galisky ("Respondent") seeking relief from the arbitration award.   (ECF No. 11.)   For the reasons that follow, the Court **GRANTS** Petitioners' motion and **DENIES** Respondent's.

*I.*       *BACKGROUND*

The three parties to this proceeding are former members of a partnership.   (ECF No. 12 at 1.)   At some point, the partnership went south after Respondent allegedly bilked the partnership out of a sizeable amount of money.   (*See* ECF No. 13 at 2.)   All parties previously filed competing lawsuits for damages prior to invoking the arbitration clause of their operating agreement.   (*See* ECF No. 13 at 2 n.1.)   By mutual agreement, the parties selected R. Scott Long ("Arbitrator") to serve as the arbitrator for their dispute.   (ECF No. 13 at 2.)   The arbitration process commenced on December 20, 2023 and a final award was granted on March 15, 2024.

(ECF No. 12 at 2.)   The process within the operating agreement required "baseball arbitration"—a style of arbitration which allows parties to present their proposal to the arbitrator, make their case, and have the arbitrator pick one winner.   (*See* ECF No. 11-1 at 26.)   With baseball arbitration, there generally is no compromise, no bargaining, and no negotiations—only a winner and a loser.   In this arbitration, Respondent was the loser.   (*See* ECF No. 11-10 at 1–2.)   The Petitioners filed for enforcement of the award on March 28, 2024.   (ECF No. 1.)

Not content with his loss, Respondent now accuses the Arbitrator of committing a series of errors which allegedly prejudiced him.   First, Respondent claims he should have been declared the prevailing party by default because "Respondent timely filed his final proposal, while the Petitioners failed to meet said deadline."   (ECF No. 12 at 2.)   To back that claim, Respondent relies on the clause which states: "[w]ithin twenty (20) days after the selection of the arbitrator, each party shall submit to the arbitrator and the other parties a proposed resolution of the dispute that is the subject of the arbitration, together with any relevant evidence in support thereof (the 'Proposal')."   (ECF No. 11-1 at 26.)   After it was determined that the twenty-day window was unattainable, the Arbitrator selected a new date, approximately January 18, 2024, for initial proposals.[1]   (ECF No. 12 at 12.)   The Respondent takes no issue with the extension itself.   (*See* ECF No. 12 at 12.)   The Arbitrator apparently indicated that the January 18th date was "flexible," provided "he [the Arbitrator] received [initial proposals] prior to the January 22, 2024 arbitration

---

[1] Respondent claims that "the Parties agreed that the Final Proposals would be due on January 18, 2024 and oral argument would occur on January 22, 2024."   (ECF No. 12 at 12.)   The evidence provided in the record does not support the claim that these were the "final" proposals.   (*See* ECF No. 11-2 at 1 (Respondent's proposal titled "Arbitration Statement for Darren Galisky"); ECF No. 11-3 at 1 (Petitioners' proposal titled "Claimant's Initial Arbitration Proposal").)

meeting." (ECF No. 1-8 at 5.) Petitioners submitted their proposal a day later on January 19, 2024, which the Arbitrator accepted as the initial proposal. (*See id.* at 14.)

As his second allegation of error, Respondent assails the final proposal ultimately chosen by the Arbitrator. Following the January 22, 2024 oral arguments, the Arbitrator had each party submit final proposals for him to select. (ECF No. 12 at 5.) The agreement between the parties required the Arbitrator to "select one of the final Proposals" submitted by the parties. (ECF No. 11-1 at 26.) The agreement also limited the Arbitrator by stating he "may not alter the terms of either final Proposal and may not resolve the dispute in a manner other than by selection of one of the submitted final Proposals." (*Id.*) The Arbitrator selected Petitioners' proposal, but indicated by email that he was concerned "as to the breadth of [Petitioners'] proposals including entities not parties to the operating agreement." (ECF No. 12 at 5.) The Petitioners opted to amend their final proposal to remove the non-covered entities, resubmit it, and allow the Arbitrator to adopt that version. (*Id.* at 6.) The Respondent took exception to that process, claiming that the Arbitrator was altering the terms of the award. (*Id.*) Respondent then asked the Arbitrator to reconsider his decision on the theory that the adopted final award was a unilateral modification of the final proposal. (*Id.* at 7.) The Arbitrator acquiesced to Respondent's request and adopted the unmodified version of Petitioners' proposal. (*Id.* at 8.) Respondent now claims that the result of the very relief he sought is error because the resulting award is unenforceable. (*Id.*)

On March 28, 2024, Petitioners asked this Court to confirm the award determined by the Arbitrator. (*See generally* ECF No. 1.) Respondent countered with a request to "vacate the award of arbitration[] pursuant to 9 U.S.C. § 10" on April 23, 2024. (ECF No. 11.) Both motions are now ripe for adjudication.

## II.    LEGAL STANDARD

The power of a federal court to review an arbitration award "is extremely limited, and is, in fact, among the narrowest known to the law."  *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008).   The Court must begin "with the presumption that the Court should confirm the arbitration award." *Wichard v. Suggs*, 95 F. Supp. 3d 935, 944 (E.D. Va. 2015) (citing *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)).   Such presumption is necessary, for "to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."  *Apex Plumbing Supply*, 142 F.3d at 193.

As such, "[e]very presumption is in favor of the validity of the award."  *Richmond, Fredericksburg & Potomac Railroad Co. v. Transportation Communications International Union*, 973 F.2d 276, 278 (4th Cir. 1992).   The Court's role is to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *U.S. Postal Service v. American Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000).

Nevertheless, the Court may vacate the arbitration award under one of the statutory grounds outlined in the Federal Arbitration Act (9 U.S.C. § 10).   The Court may vacate the award if the complaining party demonstrates one of the following scenarios:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Given the strong presumption in favor of the award, the party requesting vacation "sustain[s] the heavy burden of showing one of the grounds specified in the Federal Arbitration Act" is met.  *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010).

### III.     DISCUSSION

#### A.  The Initial Proposals Deadline

The Court will start with the issue about the initial proposal deadline.  In support of vacating the award, Respondent claims that the Arbitrator engaged in "misconduct" within the meaning of 9 U.S.C. § 10(a)(3).  (*See* ECF No. 12 at 9.)  Respondent claims that, by failing to meet the deadline of "final" proposals by one day, Petitioners were "undoubtedly conferred an unfair advantage" by "permitting them to review the Respondent's precise arguments before their untimely submission."  (ECF No. 12 at 13.)  That is a borderline frivolous argument.  The Court notes that Respondent conveniently added ellipses to cut some important language in the agreement out of his argument.  (*See* ECF No. 12 at 3 ("Within fifteen (15) days after the delivery of the last "Proposal" to the arbitrator, each party may submit a written rebuttal of the other parties' Proposal. . . . The Parties shall meet within fifteen (15) days after the Parties have submitted their final [Arbitration Statements].").)  The cut-out part of that provision states: "Within fifteen (15) days after the delivery of the last Proposal to the arbitrator, each party may submit a written rebuttal of the other parties' Proposals *and may also amend and re-submit its original Proposal*."  (ECF No. 11-1 at 26.)  Turns out, the agreement allowed either party to read, respond, and amend their own proposal accordingly.  What possible prejudice could there be?  Both parties had the ability to amend their proposal up to fifteen days after the initial proposal.  Petitioners could still see and

amend the proposal for fifteen days even if they had filed simultaneously with Respondent. Ironically, Respondent amended his arbitration proposal *seventeen days* after Petitioners filed their initial proposal (*See* ECF No. 11-5 at 1–13.)   To say he was prejudiced because Petitioners might have read his proposal a day before filing their proposal is preposterous.

The same can be said of Respondent's argument that "the Arbitrator, on his own accord, extended the deadline for the parties to submit their 'Final' proposals to an additional fifteen (15) days and for an award decision to be made thereafter."   (ECF No. 12 at 14.)   As already stated, the agreement allows for resubmission of proposals within fifteen days of filing initial proposals. Oral arguments were held on January 22, 2024, which was still within the fifteen days to resubmit proposals.   (*Id.* at 12.)   It is possible that the Arbitrator should have allowed for oral arguments within fifteen days after the resubmitted proposals.   (*See* ECF No. 11-1 at 26 ("The Parties shall meet within fifteen (15) days after the Parties have submitted their final Proposals (and rebuttals, if any), at which time each party shall have one (1) hour to argue in support of its Proposal.").) Yet Respondent has never complained of that to either the Arbitrator or this Court.   It was wholly consistent with the agreement to allow for resubmitted proposals, which both Petitioners and Respondent opted to do.

Cutting through this procedural injustice claim is Respondent's real reason he believes he was prejudiced—his proposal was not automatically adopted.   (ECF No. 12 at 14.)   The operating agreement states that "[i]f a party fails to submit a Proposal within the initial twenty (20)-day time frame set forth above, the arbitrator shall select one Proposal of the other parties as the resolution of the dispute."   (ECF No. 11-1 at 26.)   Respondent contends that the word "shall" means that "[t]he selection of the timely filed proposal is mandatory under the Operating

6

Agreement." (ECF No. 12 at 13.) Because Respondent believes his was the only proposal submitted on time, he demanded that the Arbitrator "recognize that the [Petitioners] failed to submit a final proposal by January 18, 2024" and that "the Arbitrator choose his [Respondent's] Final Proposal as it was the only proposal that was timely submitted." (ECF No. 12 at 13–14.) It appears from the record, however, that the Arbitrator did not make January 18th a firm deadline. (*See* ECF No. 1-8 at 5 (". . . the parties and [the Arbitrator] agreed to modify the timeframe for initial submissions to 'midweek before the arbitration meeting,' and [the Arbitrator] advised that he would be flexible with the timing of those submissions, *so long as he received them prior to the January 22, 2024* arbitration meeting.") (emphasis added).)

Evidently, the Arbitrator disagreed with Respondent's interpretation of the timeliness of the proper submission of initial proposals. The Court must take that at face value. *See Wichard*, 95 F. Supp. 3d at 944. Interpretations of the arbitration agreement's provisions rest solely with the Arbitrator. *See United Paperworkers International Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."). The Court cannot second guess those interpretive rulings, unless there is evidence that the Arbitrator knew of the law and disregarded it all the same. *Upshur Coals Corp. v. United Mine Workers, District 31*, 933 F.2d 225, 235 (4th Cir. 1991). It seems Respondent is really just taking issue with the Arbitrator's interpretation of what counted as "timely" under the agreement, which was modified to accommodate both parties. Respondent says January 18, 2024 was a firm deadline, the Arbitrator seems to disagree. The Court cannot overturn the award on that

disagreement alone.   For all the above reasons, the Court finds there was no misconduct by the Arbitrator.

### B.  Adopting the "Modified" Final Proposal

Finally, Respondent claims he is entitled to relief under 9 U.S.C. § 10(a)(4) because the Arbitrator exceed his powers by imposing an award that ordered the liquidation of five entities not subject to the agreement.   (ECF No. 12 at 16.)   This, of course, is a curious argument given the fact that Respondent is the one who asked the Arbitrator to "strictly enforce" the agreement and only accept one of the initially filed "final" proposals.   (*Id.* at 7–8.)   One might characterize Respondent's tactic as inviting the very error he now complains of.   Even still, the Court finds that Respondent has not sufficiently made a case to demonstrate that the Arbitrator exceeded his authority.

The Court must uphold the Arbitrator's award "so long as it draws its essence from the agreement."   *Upshur Coals Corp.*, 933 F.2d 225, 229 (4th Cir. 1991) (quotation omitted).   An arbitration award fails to draw its essence from the arbitration agreement "only if the arbitrator must have based his award on his own personal notions of right and wrong" and not based on the agreement.   *Id.* (citation omitted).

Nothing about the process indicates that the Arbitrator based his decision off of anything other than what was allowed by the agreement.   The Arbitrator indicated his concern with the scope of the award which he was granting.   However, Respondent successfully convinced the Arbitrator that he could not adopt an award that was amended in light of his stated concerns.   The Arbitrator accordingly adopted the original proposal of Petitioners—now called the "modified" proposal"—and concluded the matter.   In other words, the Arbitrator "select[ed] one of the final

Proposals so submitted by one of the parties," and he did so without "alter[ing] the terms of either final Proposal" or "resolv[ing] the dispute in a manner other than by" choosing one of the proposals.  (ECF No. 11-1 at 26.)  The Arbitrator "did his job."  *American Postal Workers Union*, 204 F.3d at 527.  The Court must now do its job in confirming the award.

As one last ditch attempt to prevail, Respondent claims that by accepting a proposal with unenforceable provisions, the Arbitrator was "well aware that he was exceeding those powers" granted by the agreement.  (ECF No. 12 at 18.)  That, according to Respondent, justifies either "submit[ting] to a neutral third-party arbitrator to decide upon a remedy for the misconduct by the arbitrator here" or straight up vacation.  (ECF No. 12 at 19.)  The Court does not see it that way.  Respondent indicates that "[n]othing in the Federal Arbitration Act 'overrides normal rules of contract interoperation.'"  (ECF No. 12 at 16 (citing Syl Pt 9, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011).)  The Court agrees, which is why Respondent loses his argument.  As the Supreme Court of Appeals of West Virginia has stated, "[t]hird persons who are not parties to an arbitration agreement generally are not bound by the agreement or any resulting award."  *See Bayles v. Evans*, 243 W. Va. 31, 39, 842 S.E.2d 235, 239 (2020) (quotation omitted).  To the extent that the Arbitrator included entities not party to the arbitration agreement, they are also not party to the award.  Thus, there is no error as the Arbitrator's award regarding entities not subject to the agreement is simply unenforceable.

Once again, the real complaint Respondent has is that his proposal was not adopted by default.  (ECF No. 12 at 18 ("As such, he could not adopt the Petitioners['] award because he could not enforce their requested relief in its entirety.").)  The Federal Arbitration Act, however, does not permit these "heads I win, tails you lose" arguments to vacate a valid arbitration award.

Accordingly, the Court finds no error justifying vacation of the award based on the adoption of the arbitration award.

*IV.    CONCLUSION*

The parties picked their arbitrator.    The Arbitrator then rendered his determination without any allegation of corrupt influence.    Ultimately, the Arbitrator selected one of the proposed resolutions without modification.    That is all Respondent was entitled to.    Because none of the rationales for vacating an arbitration award are present, the Court has no choice but to **DENY** Respondent's motion for relief, (ECF No. 11), and **GRANT** Petitioners' motion to confirm the award.    (ECF No. 1, 13.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 24, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE